# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KWARTENG PRINCE OSEI,      | CIVIL ACTION |
| Petitioner,                |              |
|                            |              |
| v.                         |              |
|                            |              |
| UNITED STATES OF AMERICA,  | NO. 18-0063  |
| Respondent.                |              |

DuBois, J.                                              January 15, 2019

## M E M O R A N D U M

### I. INTRODUCTION

*Pro se* petitioner Kwarteng Prince Osei brings this petition for writ of error *coram nobis* under the All Writs Act, 28 U.S.C. § 1651 (Document No. 1, filed March 15, 2018). Petitioner asserts that his conviction should be invalidated due to ineffective assistance of counsel during the plea proceedings in violation of his Sixth Amendment rights. Specifically, petitioner, a noncitizen, argues that counsel failed to inform him that signing the plea agreement and pleading guilty would result in his removal from the United States. For the reasons set forth below, the Court denies the petition.

### II. BACKGROUND

Petitioner is a native and citizen of Ghana. Gov't Resp. in Opp. Pet. Writ 1. In March 2008, he was admitted to the United States for a period of six months. *Id.* Despite the expiration of his visa in September 2008, petitioner remained in the United States. *Id.*

On August 13, 2015, a federal grand jury in the Eastern District of Pennsylvania charged petitioner with twenty-five counts of access device fraud, in violation of 18 U.S.C. § 1029(a)(2), and one count of possession of fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3). *Id.* at 1–2. The charges arose out of petitioner's use of stolen credit cards

to purchase "Amtrak tickets and other items." *Id.* at 2. On February 25, 2016, petitioner signed a plea agreement and plead guilty to one count of violating § 1029(a)(2) and one count of § 1029(a)(3). *Id.* at 2. The agreement included, inter alia, a provision acknowledging that the convictions could result in petitioner's deportation. *Id.* That same day, at the change of plea hearing, Judge Legrome D. Davis asked petitioner if his attorney had reviewed the plea agreement with him, and petitioner responded that he had. Change of Plea Hr'g Tr. 7:8–14, No. 15-378, ECF No. 43. Judge Davis also asked, "[Do you] appreciate that if you were for some reason not a citizen of the United States, that you could be subject to deportation as a result of this plea?" and petitioner responded, "Yes, Your Honor." *Id.* at 16:5–8. Petitioner was subsequently sentenced, inter alia, to twelve months and one day incarceration. Gov't Resp. 2.

While petitioner was in custody, immigration authorities served him with a Notice to Appear, stating he was removable both for overstaying his visa and for committing an "aggravated felony" under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(M). *See id.* Petitioner was taken into custody by the immigration authorities on September 1, 2017, upon release from custody on his access device fraud conviction. *See id.* at 2–3. On or about January 19, 2018, petitioner filed a motion to set aside his conviction pursuant to 28 U.S.C. § 2255 and was instructed to amend his motion by completing a standard form for § 2255 motions. *Id.* at 3. Petitioner did not do so. *Id.* Instead, petitioner filed the instant petition for writ of error *coram nobis* on March 15, 2018, arguing his conviction was invalid because he was not informed of the immigration consequences of his guilty pleas. *Id.* This petition was not served on the Government, and the Government did not learn of its existence, until after petitioner's removal from the United States to Ghana on May 1, 2018. *Id.* at 3–4.

On April 17, 2018, while petitioner's motion for *coram nobis* petition was pending before

the Court, but before the petition was served on the Government, an immigration court issued an order to remove petitioner from the United States. *Id.* at 3. The order of removal became final on May 1, 2018, and petitioner was removed to Ghana. *Id.* at 4.

On August 29, 2018, the Court dismissed petitioner's § 2255 motion without prejudice in light of his failure to file an amended motion on a standard § 2255 form. *Id.* at 4. The Court further directed the Government to respond to petitioner's *coram nobis* petition at that time. *Id.* at 5. On September 17, 2018, the Government filed a response in opposition. The petition is thus ripe for review.

### III. LEGAL STANDARD

The writ of error *coram nobis* is available in federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a). It is used "to attack allegedly invalid convictions which have continuing consequences" when the petitioner is no longer in custody. *United States v. Stoneman*, 870 F.2d 102, 105–06 (3d Cir. 1989). *Coram nobis* relief is available only "to correct errors for which there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier." *Id.* at 106 (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)). If the error could be remedied by a new trial, such as an error in jury instructions, a *coram nobis* petition should be not be granted. *Id.* "Rather, the error must be fundamental and 'go to the jurisdiction of the trial court, thus rendering the trial itself invalid.'" *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011) (quoting *Stoneman*, 870 F.2d at 106). Earlier proceedings challenged by the writ are presumptively correct, and the burden is on the petitioner to show otherwise. *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963).

*Coram nobis* is an "extraordinary writ," and a federal court has limited jurisdiction to grant relief. *Id.* The standard for a successful collateral attack under *coram nobis* is "even more

3

stringent than [the burden] on a petitioner seeking habeas corpus relief under § 2255." *Stoneman*, 870 F.2d at 106; *see United States v. Osser*, 864 F.2d 1056, 1059 (3d Cir. 1998) (explaining that in addressing a petition for writ of *coram nobis*, a federal court must consider the "overriding" interest in finality of judgments). The Supreme Court has observed, "[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (alteration in original).

## IV. DISCUSSION

### A. The *Coram Nobis* Petition[1]

Petitioner argues that his counsel was ineffective during the plea proceeding, because counsel failed to warn him that he could be deported as a result of his guilty plea. Mot. *Coram Nobis* Pet. 5. Specifically, petitioner asserts that his counsel (1) "affirmatively assured him that he would not experience any immigration consequences since his sentence is below a year,"[2] (2) "told him that because of the good time [sic], his offense would not be considered as a serious crime since he was not sentenced up to five years," and (3) "advised him that since the money amount did not increase his sentence he has nothing to worry." *Id.* at 2–3.

Petitioner claims that had he been advised that he would be deported, he would have gone to trial instead of signing the plea agreement. *Id.* at 5. The Government responds that petitioner's counsel reported that he and petitioner repeatedly discussed the likelihood of petitioner's deportation and that petitioner understood the risk of removal. *See* Gov't Resp. 9–

---

[1] The Government contends that a petition for writ of error *coram nobis* asserting a claim of ineffective assistance of counsel is preempted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Gov't Resp. 5 n.2. AEDPA states that a collateral challenge to a sentence cannot normally be brought later than one year after the judgment becomes final. 28 U.S.C. § 2255(f). If a § 2255 petition has already been litigated, a second motion must be based on either (1) newly discovered evidence showing innocence or (2) a new rule of constitutional law expressly made retroactive by the Supreme Court. *Id.* § 2255(h). The Court need not address this question because it concludes that, even if a *coram nobis* petition is permitted in this context, petitioner is still not entitled to relief.
[2] The Court notes that petitioner was, in fact, sentenced to twelve months and a day. Gov't Resp. 2.

4

10. The Government further argues that petitioner was well aware of the risk of his removal based on the warnings contained in his plea agreement and plea colloquy. *Id.* at 8–9. Finally, the Government argues that there is no reason to believe that a trial "would have resulted in anything other than a conviction" leading to his deportation, and thus, petitioner cannot show counsel's advice prejudiced him under *Strickland*. *See id.* at 10–11. The Court concludes that petitioner's ineffective assistance of counsel claim fails, because any deficiency in counsel's representation was cured by the plea agreement and plea colloquy, which explicitly explained the potential deportation consequences of his guilty plea.

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel claims. 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant must show (1) that counsel's performance was "deficient," falling "below an objective standard of reasonableness" and (2) that counsel's deficient performance prejudiced his clients, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694.

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and citing *Strickland*, 466 U.S. at 686). To provide effective assistance in plea proceedings, counsel must provide a defendant with enough information "to make a reasonably informed decision whether to accept a plea offer." *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). When representing noncitizen defendants, counsel has a duty to explain that "pending criminal charges may carry a risk of adverse immigration consequences," including possible

5

removal. *See Padilla,* 559 U.S. at 369. Moreover, "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.* However, an ineffective assistance of counsel claim for failure to advise a noncitizen defendant of immigration risks can be cured by providing that information to the defendant through other means, such as by a plea agreement or a plea colloquy. *United States v. Fazio,* 795 F.3d 421, 427 (3d Cir. 2015) (determining counsel's deficient performance was cured by information in defendant's plea agreement and plea colloquy).

A defendant arguing that counsel was ineffective during the plea proceedings does not have to show that, had he gone to trial, the outcome would have been different. *Lee v. United States*, 137 S. Ct. 1958, 1965 (U.S. 2017). Instead, to establish the prejudice prong of *Strickland*, a defendant is only required to make an "adequate showing" that if "properly advised, [the defendant] would have opted to go to trial." *Id.* A court making such a determination should not base its assessment solely on "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967.

Petitioner claims that his attorney did not inform him that his guilty plea subjected him to deportation. *See* Pet. 5. Assuming *arguendo* that petitioner's counsel failed to so inform him, the Court turns to whether the deficiency in counsel's performance was cured by other means of informing petitioner about the risk of removal. *See Fazio*, 795 F.3d at 427. In this case, the risk of petitioner's deportation was addressed in both the plea agreement and the plea colloquy. The plea agreement states, "The defendant may also face potential deportation." Gov't Resp. 8. Petitioner assured the Court that he read and understood the plea agreement, stating at the plea hearing, "I went through [the plea agreement] with my lawyer." Plea Hr'g Tr. 7:9. The Court

6

asked, "[D]id [your lawyer] have a full opportunity to answer all of the questions about what the document says and what the document means?" and petitioner replied, "Yes. From my understanding, yes, he did briefly go through the document and explain everything to me." *Id.* at 7:10–14. Additionally, when petitioner was asked at the plea hearing, "[Do you] appreciate that if you were for some reason not a citizen of the United States, that you could be subject to deportation as a result of this plea?", he responded, "Yes, Your Honor." *Id.* at 16:5–8.

These circumstances differ significantly from the "unusual circumstances" described in *Lee*, which petitioner cites for support in his petition. In *Lee*, the Supreme Court concluded that the attorney's failure to inform petitioner about the risk of deportation rendered counsel ineffective where petitioner asserted he would have gone to trial had he known of this risk. *See Lee*, 137 S. Ct. at 1967–68. In that case, however, both Lee and his attorney testified that Lee would have gone to trial if he had known about the deportation consequences. *Id.* Specifically, during the plea hearing in *Lee*, when the judge asked Lee whether the potential of deportation affected his decision to plead guilty, he answered "Yes, Your Honor," stated "I don't understand," and he agreed to proceed only after his attorney assured him the judge's statement was a "standard warning." *Id.* at 1968. Unlike *Lee*, in this case, there is no "contemporaneous evidence to substantiate" petitioner's assertion that he would have gone to trial had he been more informed. *See id.* at 1967.

Because petitioner was explicitly made aware of the deportation consequences of his guilty plea through the plea agreement and the plea colloquy, any deficiency in counsel's performance was cured. Thus, petitioner's ineffective assistance of counsel claim must fail. The Court denies petitioner's motion for *coram nobis* petition.

### B. Necessity of a Hearing

An evidentiary hearing on a post-conviction motion for collateral relief is necessary only where "the files and records of the case are inconclusive as to whether the movant is entitled to relief." *See United States v. Tolliver*, 800 F.3d 138, 140 (3d Cir. 2015) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005)). Because the facts of record clearly establish that *pro se* petitioner is not entitled to relief under *Strickland*, the Court concludes that a hearing on the petition is unnecessary.

### V. CONCLUSION

For the foregoing reasons, the Court denies *pro se* petitioner's motion for *coram nobis* petition. An appropriate Order follows.